```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**CRYSTAL LEA GIZZI,**

      **Appellee,**

**vs**                                              **Case No. 1:06CV55**

**EDUCATIONAL CREDIT MANAGEMENT
CORPORATION and AMERICAN
EDUCATION SERVICES,**

      **Appellants.**

**MEMORANDUM OPINION AND ORDER REVERSING THE
BANKRUPTCY COURT'S ORDER DISCHARGING STUDENT LOAN DEBT**

      This appeal concerns whether $19,203 of student loan debt belonging to the Appellee and debtor below, Crystal Lea Gizzi ("Gizzi"), was properly discharged by the Bankruptcy Court. The Appellant, and creditor below, Educational Credit Management Corporation ("ECMC"), contends that the Bankruptcy Court erred by discharging Gizzi's student loan debt under the "undue hardship" provision of 11 U.S.C. §523(a)(8). After a review of the record on appeal and applicable authority, the Court agrees and finds that the Bankruptcy Court erred in discharging Gizzi's debt. Thus, for the reasons that follow, the Bankruptcy Court's order discharging Gizzi's student loan debt is reversed.

I.    **FACTUAL BACKGROUND**[1]

---

[1] All facts are taken from the record of the Bankruptcy Court, particularly the transcript of the Bankruptcy Court's February 23, 2006 hearing. References to the February 23, 2006 hearing will be abbreviated "Tr."

**GIZZI v. ECMC**                                                    **1:06CV55**

**MEMORANDUM OPINION AND ORDER REVERSING THE
BANKRUPTCY COURT'S ORDER DISCHARGING STUDENT LOAN DEBT**

In July, 2000, Gizzi began attending classes at Computer Tech in Fairmont, West Virginia. During the course of her studies, Computer Tech became the International Academy of Design and Technology ("IADT"). Thereafter, in December, 2001, Gizzi completed a program in visual communication and graphic design and graduated from IADT. Throughout her time at Computer Tech/IADT, Gizzi applied for and received student loans to meet the costs of her education.

Upon graduation, Gizzi found employment in her field of training at Jones Monuments in Buckannon, West Virginia. After being laid-off by Jones Monuments in the winter of 2002, however, Gizzi took a part-time position with the Upshur County Public Library. Subsequently, after marrying James Gizzi in the fall of 2004, Gizzi left her job at the library and moved with her husband to Clarksburg, West Virginia. (Tr. pp. 8-9).

Following her relocation to Clarksburg, in December, 2004, Gizzi began work as a hair stylist at J.C. Penney's, but left that job in August, 2005 to begin her current job as an independent contractor hair stylist at Expressions Hair Design and Day Spa in Bridgeport, West Virginia.

The record reveals the following concerning Gizzi's financial history. From the beginning of her post-education work history to

2

the present, Gizzi's personal annual income has varied, but has never been above $10,000.[2] In 2004 and 2005, she received tax refunds of $3,591 and $3,267 respectively. Further, Gizzi has a child from a previous marriage whose father has contributed a total of approximately $14 towards his child support obligations. Finally, Gizzi's current husband, James Gizzi, is employed with the Federal Bureau of Investigation and earns approximately $38,703 per year.

Since incurring her student loan debt, Gizzi has admittedly paid back "very little," and claims that she was unable to pay any more. Further, although she has tried to defer repayment of her student loans on two or three occasions, her efforts have been unsuccessful. At the time of the Bankruptcy Court proceedings, Gizzi's student loan debt was $19,203.

## II. PROCEDURAL HISTORY

On November 10, 2004, Gizzi filed a petition for voluntary Chapter 7 Bankruptcy in the United States Bankruptcy Court for the

---

[2] In her Appellee Brief, Gizzi claimed the following taxable incomes: $986.00 (2000), $9,664.00 (2002), $8,049.00 (2003), $7.655.56 (2004), $5,249.20 (2005). Gizzi did not file a tax return for 2001. (Tr. p. 19). Gizzi and her husband James filed a joint tax return for the years 2004 and 2005. (Tr. pp. 21-22).

**MEMORANDUM OPINION AND ORDER REVERSING THE
BANKRUPTCY COURT'S ORDER DISCHARGING STUDENT LOAN DEBT**

Northern District of West Virginia, Case No. 1:04-bk-03969. In her Bankruptcy Petition, Gizzi listed only two debts: her student loan debt and a $2,012.10 debt to Verizon.[3] On February 18, 2005, Gizzi filed a "Complaint to Determine Dischargeability," seeking a determination that her student loan debt was dischargeable pursuant to the "undue hardship" provision of 11 U.S.C. § 523(a)(8).

On February 23, 2006, the Bankruptcy Court conducted a hearing on Gizzi's Petition and Complaint. Gizzi was the sole witness at that hearing, testifying on both direct and cross-examination to her financial situation and the status of her student loan debt. Following her testimony, the Court questioned the attorneys and, after some explanation, concluded that Gizzi's student loan debt should be discharged.

On March 1, 2006, ECMC appealed the Bankruptcy Court's discharge order to this Court and properly certified the record. The issues on appeal have been fully briefed and are ripe for the Court's review pursuant to 28 U.S.C. § 158(a)(1).

### III. STANDARD OF REVIEW

---

[3] With respect to the student loans, the creditor named in the bankruptcy petition is American Education Services. Because ECMC actually guaranteed some of the disputed student loans, it was joined as a defendant by order of Bankruptcy Judge Friend on March 22, 2005.

**MEMORANDUM OPINION AND ORDER REVERSING THE
BANKRUPTCY COURT'S ORDER DISCHARGING STUDENT LOAN DEBT**

As the parties correctly note, there are two standards of review applicable to this case. While the Court reviews the Bankruptcy Court's factual findings under a clearly erroneous standard, it conducts a de novo review of the Bankruptcy Court's legal conclusions. Deutchman v. IRS (In re Deutchman), 192 F.3d 457, 459 (4th Cir. 1999). Moreover, because the specific issue presented in this appeal is a mixed question of law and fact, the Court will "review *de novo* the determination of whether [the] debtor has met the undue hardship standard, and . . . review the factual underpinnings of that legal conclusion for clear error." Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour), 433 F.3d 393, 398 (4th Cir. 2005).

### IV. DISCUSSION

The Bankruptcy Code's "undue hardship" provision, found at 11 U.S.C. § 523(a)(8), states in pertinent part:

§ 523 Exceptions to discharge
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 USCS § 727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt–
. . .
(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–
    (A) (I) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

>    (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>    (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986 [26 USCS § 221(d)(1)], incurred by a debtor who is an individual

11 U.S.C. § 523(a)(8).

In Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987), the Second Circuit Court of Appeals established a conjunctive, three-prong test to evaluate whether the repayment of a debtor's educational costs subjected him or her to an undue hardship under the Bankruptcy Code. In In re Frushour, the Fourth Circuit adopted the Brunner test to evaluate undue hardship in Chapter 7 bankruptcies. 433 F.3d at 400.[4] Thus, to prove undue hardship, a debtor must show:

>    (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Id. (citing Brunner, 831 F.2d at 396).

---

[4] The Brunner test was previously applied to Chapter 13 Bankruptcies in the Fourth Circuit by Ekenasi v. Educ. Res. Inst. (In re Ekenasi), 325 F.3d 541 (4th Cir. 2003). This Court has also previously applied the Brunner test. See Educ. Credit Mgmt. Corp. v. Buchanan, 276 B.R. 744, 751 (N. D. W. Va. 2002) (Keeley, J.)

Moreover, "[t]he debtor has the burden of proving all three factors by a preponderance of the evidence." Id. Therefore, if the debtor fails to meet even one prong of the test, her debt will not be discharged. Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish), 72 F.3d 298, 306 (3d Cir. 1995); Educ. Credit Mgmt. Corp. v. Buchanan, 276 B.R. 744, 751 (N.D.W. Va. 2002).

With this analytical framework in mind, the Court now applies the Brunner factors to the facts of this case.

**A.   Prong One – The debtor must show that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans.**

As the Bankruptcy Court noted, the key dispute under this prong is whether Gizzi's husband's income should be included when considering Gizzi's financial circumstances. While the Bankruptcy Court decided not to include Mr. Gizzi's income, that decision was contrary to this Court's prior holding in Buchanan that "the income of the non-debtor spouse is relevant to determining if the debtor and her dependents would be subjected to undue hardship." Buchanan, 276 B.R. at 751. Further, the "vast majority" of courts to address the issue have likewise found that it is proper as a matter of law to consider the debtor's spouse's income when making undue hardship determinations. See White v. United States Dep't of

7

**MEMORANDUM OPINION AND ORDER REVERSING THE
BANKRUPTCY COURT'S ORDER DISCHARGING STUDENT LOAN DEBT**

Educ. (In re White), 243 B.R. 498, 509-10 (Bankr. N. D. Ala. 1999) ("[In] the vast majority of the reported opinions in which the dischargeability of a student loan debt owed by a married debtor was at issue, the courts have considered the earnings of both the debtor and his or her spouse for the purpose of evaluating the quality of the debtor's lifestyle."). Therefore, on the strength of the authorities cited, the Court finds that the Bankruptcy Court erred by not including Gizzi's husband's income in its consideration of her financial circumstances.[5] Though inquiries into income and expenses are obviously very fact dependent, Buchanan, 276 B.R. at 752, a review of Gizzi's bankruptcy petition suggests that, with the addition of her husband's income, her financial situation is such that she can repay her student loan debt without undue hardship.

While the addition of Mr. Gizzi's $38,703 salary to Gizzi's income and tax refunds[6] alone is sufficient to prevent an undue hardship discharge under the applicable standard, the Court must

---

[5] The Bankruptcy Court seems to have excluded Mr. Gizzi's income based on policy concerns involving "punishing" Mr. Gizzi – and other husbands who marry women with children from previous marriages – by forcing him to support Gizzi's child. (Tr. pp. 40-43).

[6] Gizzi's tax refunds have not been insubstantial. Between 2002 and 2004 she received refunds totaling several thousands of dollars. (Interrogatories, Document 1, Item 14, Interrogatory no. 12).

consider Gizzi's expenditures as well as her increased income. The record suggests that it would not be an undue hardship for Gizzi to reorder her expenditures and allocate money towards repayment of her student loans. For example, her claimed clothing expenditures vary from roughly $45 per month (Debtor Worksheet, Document 1, Item 27) to $100 per month (Interrogatories, Document 1, Item 14, Interrogatory 21) to $150 per month (Bankruptcy Petition Schedule J, Document 1, Item 23). Such discrepancies, coupled with Gizzi's $245.83 average monthly tithe,[1] show that Gizzi has the ability to reallocate funds towards the payment of her student loan debt. In fact, Gizzi has previously demonstrated a similar ability by using her tax refunds to pay off a debt belonging to Mr. Gizzi. (Tr. p. 35). Her student loan debt should be given similar priority.

While reordering her budget may not be to Gizzi's liking, her obligation to repay her loans is a serious one that requires sacrifice. Eddy v. Educational Credit Management Corp. (In re Eddy), 2006 Bankr. LEXIS 2545 (Bankr. N. D. W. Va. 2006). As this

---

[1] See e.g., Shaw v. United States Dep't of Educ. (In re Shaw), 2003 Bankr. LEXIS 2147, 12-13 (Bankr. E.D. Va. 2003 ("This court adopts the position . . . that charitable contributions are exluded as a proper expense in determining student loan dischargeability pursuant to 11 U.S.C. 523(a)(8)"); Ritchie v. Northwest Educ. Loan Ass'n (In re Ritchie), 254 B.R. 913, 921 (Bankr. D. Idaho 2000) ("All factors considered, the Court construes Section 523(a)(8) to exclude religious and charitable donations as a proper expense item in determining whether a debtor would be unduly burdened by not discharging qualifying student loan debt.").

court has held, debtors "cannot avoid their legal obligations to repay their debts by arguing that they would rather dedicate funds available to pay their debts to other priorities." Buchanan, 276 B.R. at 752.

While the fact-specific nature of an undue hardship analysis prevents a perfect comparison between debtors, a review of the case law shows that student loan discharge has been denied in cases with more sympathetic facts. See Ekenasi v. Educ. Res. Inst. (In re Ekenasi), 325 F.3d 541, 543 (4th Cir. 2003) (overruling district court and denying discharge for Chapter 13 debtor despite debtor's $89,418 student loan debt, $42,000 yearly income and at least five dependent children); Cunningham v. Sallie Mae Servicing Corp. (In re Cunningham), 2006 U.S. Dist. LEXIS 24427 (N. D. W. Va. 2006) (no discharge for 51 year old debtor with over $49,000 in student loan debt who suffered from myasthenia gravis, asthma, vertigo, high blood pressure, high cholesterol, esophageal reflux, obesity and spinal stenosis, receiving monthly income between $1,709.81 and $2599.26, and accumulating $1619.27 in monthly expenses); Eddy, 2006 Bankr. LEXIS 2545 at 2-3 (no discharge of $62,461 in student loan debt for debtor with a monthly average income of $2,232 and monthly expenses estimates varying between $1,627 and $3512.33); and Educ. Credit Mgmt. Corp. v. Spence, 341 B.R. 825, 827 (E. D.

10

Va. 2006) (no discharge for debtor in her "mid sixties" with $161,000 in debt and annual income of $26,000). But see Floyd v. Educ. Credit Mgmt. Corp., 54 Fed. Appx. 124, 125 (4th Cir. 2002) (affirming, against a district court's reversal, a bankruptcy court's discharge of most of the $27,781 in student loan debt of a 33 year old debtor with no dependents and an income of $27,950).

In this case, when Gizzi's husband's income is properly included in the consideration of her financial situation, and when elements of her monthly expenditures are considered under the proper undue hardship analysis, it becomes clear that Gizzi would be able to maintain at least a minimal standard of living while paying back her student loans. Thus, Gizzi fails the first prong of the Brunner test and does not qualify for an "undue hardship" discharge of her student loan debt.

While the first prong of the Brunner test is a threshold question that, if not met, makes analysis of the second and third prongs unnecessary, Buchanan, 276 B.R. at 751, the Court will briefly address those prongs given the lack of legal clarity in the underlying record.

**B.   Prong Two – The debtor must show that additional circumstances exist indicating that this state of affairs [the inability to maintain a minimal standard of living if forced to repay the loans] is likely to persist for a significant portion of the repayment period of the student loans.**

The second prong is the heart of the Brunner test because "[i]t most clearly reflects the congressional imperative that the debtor's hardship must be more than the normal hardship that accompanies any bankruptcy." In re Frushour, 433 F.3d at 409.  It is "a demanding requirement [that] necessitates that a certainty of hopelessness exists that the debtor will not be able to repay the student loans." Id. (internal citations and punctuation omitted).

In this case, the record establishes that Gizzi is in her mid-twenties; she has no reported health issues; her husband has a stable job; and, she has completed vocational education.  Having once found employment in the field of her education, there is no reason why she could not find work in that field again, should she choose to do so.  Instead, Gizzi has chosen to start her own hairstyling business.  Perhaps because her business is relatively new, it has yet to prosper; however, having a low-paying job "does not in itself provide undue hardship, especially where the debtor is satisfied with the job, has not actively sought higher-paying employment, and has earned a larger income in previous jobs." In re Frushour, 433 F.3d at 401.  In light of her age, health,

employment history, current and future opportunities as well as spousal income, it is clear that Gizzi does not meet the demanding standard of Brunner's second prong.

**C.   Prong Three – The debtor must show that she has made good faith efforts to repay the loans**

A key under Brunner's third prong is "the debtor's effort to seek out loan consolidation options that make the debt less onerous." Frushour, 433 F.3d at 402.  Here, the record is clear that, while Gizzi is aware of loan consolidation and repayment options, she has not attempted to take advantage of them.  Indeed, the record reflects that since accruing her debt Gizzi has repaid only $392 of her $19,203 in student loans. (Interrogatories, Document 1, Item 14, Interrogatory no. 15).  When compared to the repayment histories of debtors in other cases addressing Brunner's third prong, it becomes clear that Gizzi's limited repayment history does not satisfy the good faith standard. For example, in In re Frushour, the debtor, a self-employed design contractor in her forties, made twenty-three payments of either $113.43 or $189 per month on a student loan debt of approximately $12,000, yet still fell short of the good faith effort requirement of Brunner's third prong.  433 F.3d at 396-7, 402-3.  Gizzi simply has not made

13

a good faith effort to live up to her repayment obligations. Thus, she fails <u>Brunner</u>'s third prong as well.

## V. CONCLUSION

Though failure of only one prong is dispositive, Gizzi fails all three prongs of the test that governs her claims of undue hardship. As a matter of law, the Bankruptcy Court should have considered her husband's income when evaluating her financial situation. When her husband's income is included and financial priorities are reordered, Gizzi would be able to maintain an above minimal standard of living while still repaying her loans. Congress has imposed a serious responsibility on student loan recipients – a responsibility that Gizzi's situation does not excuse.

Therefore, for the reasons set forth above, this Court reverses the Bankruptcy Court's February 27, 2006 order discharging Gizzi's student loan debts and remands this case for further proceedings in accord with this Order.

It is so **ORDERED**.

**GIZZI v. ECMC**                                                    1:06CV55

**MEMORANDUM OPINION AND ORDER REVERSING THE
BANKRUPTCY COURT'S ORDER DISCHARGING STUDENT LOAN DEBT**

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: February 23, 2007.

                                            /s/ Irene M. Keeley
                                            IRENE M. KEELEY
                                            UNITED STATES DISTRICT JUDGE